RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL,
DATE 8 29 05
BY

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

MICHELLE R. WILLIAMS

versus

CIVIL ACTION NO. 04-1531
JUDGE TOM STAGG

STERLING HEALTHCARE SERVICES, INC.

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by Sterling Healthcare Services, Inc. ("Sterling"). See Record Document 18. For the reasons set forth below, the Sterling's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

Sterling provides pharmaceutical products, equipment, and services to nursing homes and other long-term care facilities in Louisiana. Sterling operates two pharmacies, one in Shreveport and one in Alexandria. It is a wholly-owned subsidiary of Omnicare, Inc. ("Omnicare"), which owns pharmacies in forty-seven states.

Plaintiff Michelle Williams ("Williams"), an accountant, was hired by Sterling after it was acquired by Omnicare. Among other duties, Williams was

1

responsible for reporting Sterling's state sales tax. Williams was directly supervised by a regional controller in Oklahoma City, Jana Armstrong ("Armstrong"), who in turn was supervised by the regional chief financial officer for the southern region, William Tucker ("Tucker").

In addition to her accounting duties, Williams also volunteered to take on miscellaneous human resources and administrative duties previously performed by other employees. These additional duties eventually proved to be too much for Williams and she requested that Teresa Bordelon ("Bordelon") be reassigned to become her assistant. Williams's request was granted, however, in addition to her duties as Williams's assistant, Bordelon also filled in as a pharmacy technician on an as needed basis.

The day-to-day operations of Omnicare's individual pharmacy units, such as Sterling, are managed by an on-site director, but the overall management including accounting, finance, human resources, and the like, are generally performed at the regional headquarters. As Omnicare acquired new institutional pharmacy companies, it gradually consolidated many of the formerly local functions into its regional hubs. However, when Omnicare originally acquired Sterling, it elected not to consolidate Sterling's accounting because of difficulties with Sterling's accounting

system and with reporting of state sales tax.[1] Accordingly, the accounting system at Sterling was left in place after being acquired by Omnicare in 1997.

In early 2003 Tucker, as chief financial officer for the Southern Region, began to pressure Armstrong to eliminate Williams's position at Sterling. Armstrong resisted because of the difficulties with sales tax and the accounting system in place. During the same period, Tucker also began to pressure Bob Foley ("Foley"), the on-site director at Sterling, to eliminate Williams's position. Foley also resisted because he desired to keep control of his operation in Shreveport to the greatest extent possible, and did not want to incur a budget decrease.

In January of 2003, Armstrong was informed that Williams's accounting position at Sterling must be eliminated because Sterling was the only unit in the region who still had an on-site accountant, which was the sole deviation from the "regional business model" being established by Omnicare. Armstrong acquiesced and Tucker no longer opposed the change due to a substantial loss of business that in turn resulted in a loss of revenue. Tucker then contacted Sandi Lenhart

---

[1] Sterling was the first pharmacy acquired by Omnicare in Louisiana, and Omnicare contends that the procedure for recording and reporting state sales tax in Louisiana was quite different than what it had previously encountered in other states. Of the seventeen pharmacies acquired in its Southern Region, all of the "on-site" accountant functions had been eliminated, except for the one in Shreveport.

("Lenhart"), the Director of Human Resources for the Southern Region, about taking steps to eliminate Williams's position. He was advised that because of Williams's pregnancy, the elimination of her position should be postponed until after her return from maternity leave. Despite Lenhart's instructions Tucker did request that Armstrong begin shifting Williams's duties to the regional office in Oklahoma City.

In February of 2003, Armstrong met with Williams and began the process of transferring many of her responsibilities to Oklahoma City. Despite the fact that she was not expressly told of the shift at this point, it became clear to Williams as the process progressed that her accounting duties were being transferred to Oklahoma City. Williams began maternity leave and delivered her baby on April 28, 2003, by which point the majority of her accounting duties had been transferred.

On June 9, 2003, Williams returned from maternity leave, and on June 13, 2003, she was notified by Foley that her accounting position had been eliminated. Williams filed the instant suit on July 23, 2004, alleging that she had been wrongfully terminated on the basis of pregnancy discrimination in violation of Title VII of the federal Civil Rights Act of 1964 and Louisiana employment discrimination law, she further alleged that she had been discharged in retaliation for taking leave under the Family and Medical Leave Act ("FMLA"). See Record

4

Document 1.

## II. LAW AND ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The Fifth Circuit has held that "a genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." Cabillo v. Cavender Oldsmobile, Inc., 288 F.3d 721, 725 (5th Cir.2002) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). However, the non-movant cannot survive summary judgment by simply making "conclusory allegations" or "unsubstantiated assertions." Id.

If the movant does demonstrate the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the

nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

B.  Title VII Discrimination.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer. . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

A clear evidentiary framework for analyzing Title VII claims was set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). This court continues to adhere to the McDonnell Douglas framework. See Boyd v. State Farm Ins. Cos., 158 F.3d 326, 328 (1998).[2]

---

[2] By citing the case of Batka v. Prime Charter Ltd., from the Southern District of New York, it would appear that Williams is attempting to argue that evidence of a mixed motive on the part of Sterling is sufficient to rebut Sterling's articulated reason for Williams's termination and survive summary judgment. See Record Document 27 at 9, Batka v. Prime Charter Ltd., No. 02CV6265, U.S.D.C., S.D.N.Y. 02/02/2004, 301 F.Supp.2d 308. However, Williams goes on to state that the court's observations in Batka regarding mixed motive, although correct, are not applicable in this case. See Record Document 27 at 10. As such, the court has chosen to analyze the facts of this case under the standard McDonnell Douglas framework alone. However, the court is convinced that under either test Williams would be unable to meet her burden, as she has set forth no evidence that her pregnancy was even a "motivating factor" for the elimination of her position. See

6

Under the McDonnell Douglas framework, a Title VII plaintiff must first establish a prima facie case for discrimination by a preponderance of the evidence. A prima facie case of race discrimination is established by showing that (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) an adverse employment action was taken against her; and (4) that she was replaced by someone from outside the protected class. See Frank v. Xerox, 347 F.3d 130, 137 (5th Cir. 2003); McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824.

If the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory, reason for the challenged employment action. If the defendant "comes forward with a reason which, if believed, would support a finding that the challenged action was nondiscriminatory, the inference raised by the plaintiff's prima facie case drops from the case." LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996). In this event, the burden shifts back to the plaintiff who must demonstrate that the defendant's articulated nondiscriminatory rationale is pretext, thereby permitting the court to infer intentional discrimination. See St. Mary's Honor

---

generally Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148 (2003).

Center v. Hicks, 509 U.S. 502, 511, 133 S.Ct. 2742, 2749 (1993).

The plaintiff can prove that the reason was pretext either (1) directly by persuading the court that a discriminatory reason more than likely motivated the employer, or (2) indirectly by showing that the employer's explanation is unworthy of credence. See Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001). At the summary judgment stage, the question is not whether the plaintiff has proven pretext, but rather whether the plaintiff has raised a genuine issue of fact with respect to pretext. See Hall v. Gillman Inc., 81 F.3d 35, 37 (5th Cir. 1996).

Williams claims that Sterling discriminated against her based upon her pregnancy when they terminated her employment after her return from maternity leave under the FMLA. However, Williams is unable to prove the fourth element of a prima facie case of discrimination; therefore her claim must fail.

Williams has failed to demonstrate that she was replaced by someone from outside her protected class after her termination. The plaintiff claims that she was "replaced in the functions of her job by her assistant, Teresa Bordelon." Record Document 27, Plaintiff's Statement of Disputed Facts. However, the record shows that while Teresa Bordelon did assume a fraction of Williams's duties, she did not replace her. In fact, Williams's primary duties as an accountant were absorbed by the regional office. See Record Document 18, Tucker Depo. at 30-31; Foley Depo.

at 54.

Even if Williams was able to make a prima facie case of discrimination, her claim must still fail because Sterling has articulated a legitimate nondiscriminatory reason for her termination, which she is unable to rebut. Sterling has stated that Williams's termination was the result of its decision to eliminate the aberrant accounting function at Sterling. See Tucker Depo. at 16-17; Record Document 18, at 9. Williams, however, has not set forth sufficient evidence to rebut this presumption or create a genuine issue of material fact as to Sterling's motivation. In support of her contention of pretext, Williams sets forth four different pieces of "evidence." Record Document 27 at 3.

First, Williams points out that while four other employees were terminated during the same time period, none of those were informed that their position was being eliminated as a part of a reduction in force. Of those four she states that three resigned and one was terminated for cause dispelling the notion that Sterling was implementing any sort of reduction in force. This argument is immaterial as it is clear that the elimination of Williams's position was intended to be not just a reduction in force, but an attempt at regionalization. See Record Document 18, Tucker Depo. at 16; Tucker Affidavit at 3.

Williams's second argument in support of her claim of pretext is that she was

9

replaced by Bordelon, and that the elimination of Williams's accounting function did not result in any payroll savings because Bordelon's pay was raised to be equal to that of Williams. See Record Document 27 at 5. This argument is also without merit. The court has already determined that Williams was not replaced, instead her accounting duties were absorbed by the regional office in Oklahoma City. See Record Document 18, Tucker Affidavit at 3. In addition, her argument about Bordelon's pay is simply incorrect. Despite the fact that Bordelon's pay was raised, Sterling had still eliminated the accounting position and is now paying one, rather than two, employees. The financial benefit resulting from that decision is clear.

Williams argues that her exit interview is further evidence of the "pretextual nature" of Sterling's decision. See Record Document 27 at 6. She urges that the fact that Foley's evaluation of her performance dropped significantly after her pregnancy and maternity leave constitutes evidence of pretext. However, there is no evidence of any correlation between her pregnancy and her evaluation. She merely expects this court to conclude that because her performance ratings had dropped, that she was terminated because of her pregnancy. The court cannot make such a leap in reasoning.

Finally, Williams argues that Sterling's decision not to eliminate her position until she returned from maternity leave was accomplished by keeping the decision

a secret and denying that it had been made, and that a trier of fact might therefore conclude that Sterling's articulated reason for the elimination of her position was pretext. See id. at 9. Even when considered as a whole, these four "pieces of evidence" are not sufficient to create a genuine issue of material fact as to pretext. Mere conclusory allegations such as these are not sufficient to survive a motion for summary judgment. See Cabillo, 288 F.3d at 725 (citation omitted). Williams has simply failed to meet her burden in this respect and therefore, Sterling's motion for summary judgment is **GRANTED** as to Williams's claim of discrimination under Title VII.

C. **Louisiana Employment Discrimination Law.**

It is well settled that claims under Louisiana employment discrimination law are analyzed in the same manner as those under Title VII. See King v. Phelps Dunbar, L.L.P., 98-1805 (La. 6/4/99); 743 So.2d 181, 187. Williams's claims under Louisiana law are therefore as equally without merit as those discussed above. Accordingly, Sterling's motion for summary judgment is **GRANTED** as to Williams's claim of discrimination under Louisiana employment discrimination law.

D. **Retaliation.**

Section 2612(a)(1)(A) of the FMLA requires covered employers, such as Sterling, to provide eligible employees with up to twelve weeks of unpaid leave for

11

certain medical situations, including the birth of a child. See 29 U.S.C. § 2612(a)(1)(A). To succeed in her claim of retaliation, Williams must show that (1) she engaged in activity protected under the FMLA, (2) Sterling took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse employment action. See Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002).

Like discrimination claims, retaliation claims are subject to the McDonnell Douglas burden shifting analysis if there is no direct evidence of retaliation, as is the case here. However, because the plaintiff has failed to establish a prima facie case of retaliation, the burden never shifts to Sterling.

Furthermore, Williams cannot establish the third prong of her prima facie case because she has demonstrated absolutely no causal connection between the protected activity of taking leave under the FMLA and Sterling's decision to consolidate its accounting department and eliminate her position. It is clear from the record that at the time of the elimination of Williams's position, Sterling was the only Omnicare pharmacy unit in the southern region with its own accountant. See Record Document 18, Tucker Depo. at 16-17; Lenhart Depo. at 23-24. It is also apparent that Omnicare was interested in consolidating its management for

efficiency purposes well before Williams's maternity leave. See Record Document 18, Tucker Affidavit at 2-3; Lenhart Deposition at 23. In fact, Tucker began pressuring Armstrong to eliminate Williams's position in January of 2003, well before Williams began her leave. See Record Document 18, Tucker Depo. at 25-26. Williams does not specifically address her retaliation claim in her opposition to Sterling's motion for summary judgment, however, she seems to point to interaction with Foley, during which he voiced concerns about her absence from work for personal and medical problems, as evidence of a causal connection. See Record Document 27 at 7-8. This is simply not sufficient. There is no evidence that these concerns were in any way related to the elimination of her position. In fact there is no evidence in the record to indicate that Foley had any part in the decision to eliminate her position. Instead, the record shows that the decision was reached by Tucker, after initial resistance from Foley. See Record Document 18, Tucker Depo. at 25-27.

Even assuming, arguendo, that Williams was able to set forth a prima facie case of retaliation, as the court pointed out above, she is still unable to rebut Sterling's articulated legitimate, non discriminatory, reason for her termination. Accordingly, Sterling's motion for summary judgment is **GRANTED** as to

Williams's claim of retaliation.

## III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Record Document 18) is **GRANTED**. A judgment consistent with the terms of this Memorandum Ruling shall issue herewith. All claims by Williams against Sterling are hereby **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 29th day of August, 2005.

JUDGE TOM STAGG